UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| GA VIEWS MANAGEMENT, LLC | ) Case No. 24-00339-ELG |
| | ) |
| Debtor. | ) |
| | ) |

### MOTION TO LIFT THE AUTOMATIC STAY

PV Georgia Views LLC ("Lender"), a secured creditor of Debtor GA Views Management, LLC ("Debtor"), respectfully moves pursuant to 11 U.S.C. § 362 to lift the automatic stay, showing the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### FACTUAL BACKGROUND

**A. The Loan Documents and Debtor's Defaults**

3. Debtor is indebted to Lender pursuant to that certain Promissory Note in the original principal amount of $7,200,000.00 dated February 19, 2020 payable by Debtor to Lender, as successor in interest to Parkview Financial REIT, LP (as amended and/or modified, the "Note") and that certain Construction Loan Agreement dated February 19, 2020 by and between Debtor and Lender (as amended and/or modified, the "Loan Agreement").

James E. Van Horn
D.C. Bar No. 999859
JVanHorn@btlaw.com
BARNES & THORNBURG LLP
555 12th Street, NW, Suite 1200
Washington, D.C. 20004
Phone:  (202) 371-6351

4. The Note is secured by a first-priority lien on real property and improvements located at 3557-3559 Georgia Ave NW, Washington, DC 20010 (as more particularly described in the Deed of Trust, together with all property securing the amounts owed by Debtor to Lender, the "Property") pursuant to that certain Construction Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 19, 2020, executed by Debtor and recorded in Office of the Recorder of Deeds, District of Columbia, Document No. 2020028612 (as amended and/or modified, the "Deed of Trust", together with the Note, and Loan Agreement, the "Loan Documents").

5. Pursuant to the Deed, Lender has a first-priority security interest in the Property.

6. Debtor was notified on or about October 20, 2022 that it was in default under the Loan Agreement for failing to make monthly payments as and when due, and failing to pay the entire unpaid principal balance, plus accrued interest thereon and all other amounts owed under the Loan Documents on or before October 19, 2022.

7. On or about November 15, 2022, Lender notified Debtor that the Property was to be sold at a public sale on December 15, 2022.

8. Debtor informed Lender it was in the process of seeking to refinance the debt owed to Lender and on or about December 12, 2022, Lender and Debtor entered into a Forbearance Agreement, as amended by the Amended and Restated Forbearance Agreement dated June 10, 2023 (the "Forbearance Agreement"). Pursuant to the Forbearance Agreement, Lender agreed to forbear from exercising its rights and remedies through no later than December 10, 2023.

9. Debtor failed to timely pay all amounts owed under the Loan Documents and the Forbearance Agreement. Thereafter, Lender scheduled a foreclosure of the Property for August 29, 2024 and subsequently re-noticed the foreclosure for October 9, 2024.

### B. The Bankruptcy Proceedings

10. On October 9, 2024 (the "Petition Date"), the morning of the scheduled foreclosure sale, Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), initiating this proceeding.

11. Debtor indicated on its petition that it is a Single Asset Real Estate entity as defined in 11 U.S.C. § 101(51B). (Doc. No. 1 at 2).

12. On or about October 17, 2024, Lender filed a Motion to Prohibit Use of Cash Collateral, for Adequate Protection, and Other Relief (the "Adequate Protection Motion") (Doc. No. 10). On or about November 6, 2024, the Debtor filed an Opposition to the Adequate Protection Motion and a Cross-Motion for Use of Cash Collateral (the "Cash Collateral Motion") (Doc. No. 20).

13. On November 13, 2024, the Court held a hearing on interim use of cash collateral (Doc. No. 22), and on November 14, 2024, the Court entered a consented to Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection and Related Relief and (III) Scheduling a Final Hearing ("Interim Order") (Doc. No. 23).

14. Paragraph E of the First Interim Order contained certain stipulations, including that as of the Petition Date, the Debtor was indebted to Lender without defense, counterclaim, recoupment, or offset of any kind in the total amount of $8,443,865.12, plus Lender's attorneys' fees and expenses, with interest accruing after October 9, 2024, at the non-default *per diem* of $2,229.07 plus default *per diem* of $1,438.89, which was secured by a first-priority lien on the Property. (Thus, interest accrues at $66,872.10 per month at non-default rate, plus $43,166.70 at default rate, for a total of $110,038.80 per month.)

3

15. Pursuant to the First Interim Order, the Debtor had fourteen (14) days after entry of the First Interim Order, or November 28, 2024, to file a written objection with the Court disputing the attachment or perfection of Lender's liens on the Collateral or disputing the Stipulations. Otherwise, the Stipulations would be deemed stipulations and agreements of the Debtor. (Doc. No. 23, ¶¶ 17, 18). The Debtor did not file a written objection, timely or otherwise. (*See generally,* Docket). Thus, the Stipulations are deemed stipulations and agreements of the Debtor. (Doc. No. 23, ¶¶ 17, 18).

16. On or about December 4, 2024, Lender filed its Motion for Order Confirming that the Automatic Stay has been Modified and Granting Related Relief (the "Comfort Order Motion") seeking an order that pursuant to First Interim Order, the Automatic Stay had been terminated due to Debtor's defaults under the First Interim Order.

17. On December 16, 2024, Debtor filed an Opposition to the Comfort Order Motion (Doc. No. 35).

18. On December 18, 2024, the Court held a hearing on the Comfort Order Motion and a continued hearing on the Cash Collateral Motion. At the hearing, the Court determined that, notwithstanding Debtor's failure to comply with the First Interim Order, because Debtor had generally attempted to comply with the reporting requirements contained in the First Interim Order, the Court would give the Debtor one last chance to comply. Further, counsel to the Debtor reported to the Court that the parties had an agreed upon second interim cash collateral order to upload regarding the Cash Collateral Motion, which order had been previously circulated by Lender's counsel to Debtor's counsel and counsel for the United States Trustee.

19. On December 18, 2024, immediately following the hearing, counsel to Lender recirculated the proposed second interim order to Debtor's counsel and counsel for the United States Trustee.

20. On the evening of December 18, 2024, Debtor's counsel sent an email to Lender's counsel requesting substantial changes and modifications to the proposed second interim order, including an extension of the deadline to object to the Stipulations even though the deadline to object to the Stipulations had passed and the Stipulations were already deemed admitted by the Debtor, and requested changes to the reporting requirements under the order. Lender's counsel responded to the email accepting minor changes that were typographical in nature, but did not agree to permit Debtor to modify the Stipulations, extend the deadline to object to the Stipulations, or revise reporting requirements (which were the same as those contained in the First Interim Order). Lender's counsel also reminded Debtor's counsel that the Debtor's authority to use cash collateral ended on December 19, 2024, unless a further order was entered.

21. On December 20, 2024, after not receiving a response from Debtor's counsel, Lender sent another follow up email and informed Debtor's counsel that Debtor was not permitted to use any cash collateral as it did not have authority from the Court.

22. On December 23, 2024, Debtor filed a substitution of counsel (Doc. No. 39).

23. On December 23, 2024, Lender's counsel sent Debtor's new counsel the proposed second interim order and the previous correspondence with Debtor's prior counsel regarding same.

24. On January 6, 2025, one day before the deadline to pay Lender monthly non-default interest or file a plan that has a reasonable possibility of being confirmed within a reasonable time, Debtor filed unsigned amended schedules D, E/F (the "Amended Schedules") (Doc. No. 43), the Debtor's Disclosure Statement in Support of its Chapter 11 Plan dated January 6, 2025 (the

5

"Disclosure Statement") (Doc. No. 45) and the Debtor's Chapter 11 Plan dated January 6, 2025 (the "Plan") (Doc. No. 46).

25. On January 7, 2025, Lender filed its Status Report (Doc. No. 48) detailing the numerous discrepancies between Debtor's cash collateral reporting, monthly operating reports, and bank statements.

26. On January 8, 2025, the Court held a further hearing on the Comfort Order Motion. Based on the lack of a cash collateral order and Debtor's admitted discrepancies with regards to financial reporting, the Court scheduled a further hearing on the Cash Collateral Motion for January 22, 2025.

27. On January 14, 2025, Lender filed its Proof of Claim (the "Proof of Claim") (Claim No. 1) reflecting that Lender is owed $8,443,865.12 as of the Petition Date, with interest continuing to accrue at the default rate.

28. To date, the Debtor and Lender have not agreed on a further cash collateral order and budget. Thus, Debtor does not have permission to use cash collateral and has not had such permission since December 19, 2024.

**C. Debtor's Unconfirmable Plan**

29. The Plan provides for either (1) a refinance of the debt owed to Lender or (2) a sale of the Property, with payment to Lender within a year of the effective date of the Plan.

30. The Plan provides for payment of Administrative Expenses, which include U.S. Trustee fees and professional fees, on the effective date of the Plan. The Disclosure Statement does not provide an estimate of the amount of Administrative Expenses, other than stating that as of January 6, 2025, Debtor owed its new counsel, Mr. Weiss, approximately $20,000. Debtor concedes it does not know what is owed to its prior counsel, Mr. Johnson. The Disclosure

Statement states that the Debtor is not aware of any other Administrative Expenses, but Lender notes that Debtor has been without authority to use cash collateral since December 19, 2024, and therefore any claim based on goods or services provided to the Debtor since that time and not paid for may be entitled to Section 503(b) treatment and would need to be paid on the Effective Date.

31. The Plan separately classifies (1) priority non-tax claims as Class A; (2) Lender's claim as Class B-1; (3) Non-Insider General Unsecured Claims as Class C; and (4) Insider General Unsecured Claims as Class D.

32. While Debtor states that is unaware of any priority non-tax claims, it fails to disclose or provide for payment of secured tax claims. Amended schedule D (Doc. No. 43) added a secured claim in the amount of $141,000 by the Office of Tax and Revenue for the District of Columbia. Pursuant to Section 1129(a)(9)(C), such a claim must receive regular installment payments in cash totaling the amount of such claim over a period ending not later than five (5) years after the Petition Date and in a manner not less favorable than the most favored nonpriority unsecured claim provided for in the plan. *See* 11 U.S.C. § 1129(a)(9)(C).

33. The Plan states that Lender has a secured claim in the amount of $7,400,000 and proposes that Lender shall retain its lien, and its "claim shall be paid in full on or before the first anniversary of the Effective Date from the proceeds of a refinance or sale of the Property. Monthly interest-only payments of $28,344.04 per month for three months, and $39,010.71 for nine months, based on a 30-year amortization of $7,400,000 at *Till* interest of 8.50%, shall be made beginning on the first day of the first month after the Confirmation of this Plan." (Doc. No. 46 at 7).

34. The Plan provides that Class C claims totaling $691,098.50 which is stated to contain only Non-Insider General Unsecured Claims (although it contains claims of insiders), will be paid (1) a *pro rata* share of all net proceeds of the refinance after payment of closing costs and

liens on the Property; or (2) a *pro rata* of all net proceeds of the sale after payment of closing costs and liens on the Property. If the Property is refinanced and there is a balance owed to creditors in Class C after the *pro rata* distribution, allowed claims shall be paid in full in monthly *pro rata* payments over five years. The Plan provides that Class C claims are impaired despite the claims being paid in full if the Debtor refinances the Property.

35. If following the payment in full of all Class A, B-1, and C creditors, any remaining proceeds from the refinance or sale of the Property shall be distributed *pro rata* amongst Debtor's insiders, Class D creditors.

36. The Disclosure Statement asserts that the Property is worth $11,500,000[1] and that under a chapter 7 liquidation there would be sufficient proceeds to pay all non-insider unsecured creditors in full, and to pay insider general unsecured claims in part.

37. Debtor's Disclosure Statement and Plan fail to include any discussion or analysis of feasibility.

38. To date, the Debtor has not filed a confirmable plan and the Debtor has not commenced payment of non-default monthly interest payments to Lender, as required under Section 362(d)(3).

39. For the reasons set forth below, Lender is entitled to relief from the automatic stay so that it may exercise all rights under applicable state law and the Loan Documents to conduct a foreclosure sale of the Property or otherwise exercise its rights and remedies associated therewith.

## **ARGUMENT**

40. Pursuant to Section 362(d)(3), the Court shall grant relief from the automatic stay with respect to an act against single asset real estate unless, not later than the date that is 90 days

---

[1] Lender notes that the letter of transmittal from the appraiser attached to Debtor's Disclosure Statement states that the value of the Property is $11,500,000 upon stabilization. (*See* Doc. 45, Ex. C). The Property is not stabilized.

after the entry of the order for relief, the debtor has (A) filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or (B) commenced monthly payments that are in an amount equal to interest at the then applicable nondefault contract rate of interest.  *See* 11 U.S.C. § 362(d)(3).

41. Debtor is a single asset real estate entity (Doc. No. 1 at 2).

42. The Debtor filed the Disclosure Statement and Plan on the eve of the Section 362(d)(3) deadline, which Debtor's counsel admitted was to avoid the payment to Lender of non-default monthly interest.  A review of the proposed Plan leads to no conclusion other than there is no reasonable possibility that the Plan will be confirmed within a reasonable time.  Not only does the Disclosure Statement fail to contain adequate information such that it should not be approved, but the Plan is neither feasible nor confirmable.

43. There are numerous flaws in the proposed Plan that render it incapable of being confirmed at all, let along within a reasonable amount of time.

**I.    The Plan does not comply with Section 1129(a)(1).**

44. The Plan does not classify, account for or propose to pay the secured tax claim in the amount of $141,000.00, which is admittedly owed as reflected on Debtor's Schedules.  (*See* Doc. 43, 2.1).

45. The Plan also does not account for equity interests or the treatment of same under the Plan.  As such the Plan does not comply with the applicable provisions of Title 11.  *See* 11 U.S.C. § 1123(a)(1) (requiring a debtor to designate classes of claims and classes of interest).

**II.   The Inclusion of Insiders in Class C constitutes a lack of good faith pursuant to Section 1129(a)(3)**

46.     Class C of the Plan purports to include allowed general unsecured claims of non-insiders, with the total amount of Class C claims listed as $691,098.85  However, both the Plan and the Disclosure Statement list the following insider claims as part of Class C:

| Mahmood Nawroz Rasheed | $5,000.00 |
| Bonifacio Rivera | $50,000.00 |
| Fanuel Roblero | $5,000.00 |
| Dolores Rodriguez | $5,000.00 |
| Julio Rodriguez | $25,000.00 |
| Rafael M. Rodriguez | $290,000.00 |
| Rocky Rosales | $25,000.00 |
| **TOTAL** | **$405,000** |

Pursuant to the Debtors' testimony at the Section 341 meeting, each of the above persons are insiders and therefore their vote cannot be included in determining whether an impaired class has accepted the plan. *See* 11 U.S.C. § 1129(a)(10).

47.     It appears that the inclusion of these insider claims in Class C was done in order to gerrymander a class to meet the one-class acceptance rule of Section 1129(a)(10).  This can be a sign of lack of good faith. *See Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346 (5th Cir. 1989); *In re Waterways Barge P'Ship*, 104 B.R. 776 (Bankr. N.D. Miss. 1989).

48.     Absent the inclusion of insiders in Class C, Debtor cannot obtain the affirmative vote of an impaired accepting class, which is fatal to its proposed Plan.

**III.     The Plan is not feasible pursuant to Section 1129(a)(11).**

49.     Section 1129(a)(11) of the Bankruptcy Code provides that a plan may only be confirmed if confirmation is not likely to be followed by liquidation, or the need for further financial reorganization.  "In determining whether [a plan] is feasible, the bankruptcy court has an

obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." *In re Monnier Brothers*, 755 F.2d 1336, 1341 (8th Cir. 1985).

50. The Plan proposes that Debtor pay Lender monthly interest payments at 8.5%[2] based on a thirty-year amortization, but Debtor's Plan includes proposed payments of $28,344.04 per month for the first three months and $39,010.17 for 9 months. Notwithstanding that Debtor stipulated and agreed that Lender is owed over $8.4 million as of the Petition Date, with interest continuing to accrue at the default rate, Debtor proposes that Lender's claim be in the amount of $7,400,000 and that interest accrue thereon. But Debtor fails to propose to pay interest in full on the $7.4 million alleged claim at 8.5%, which is $56,900.00 per month at 8.5% based on a thirty-year amortization. Thus, not only does the Plan fail to propose to pay Lender *Till* interest on the full, correct amount of its claim, but also fails to propose payments on the claim amount stated in the Plan at the proposed rate of interest (both of which are incorrect). Assuming *arguendo* that 8.5% is the correct rate of interest (which Lender disputes), Lender's Allowed Claim in the amount of $8,443,865.12 would result in payments of $64,926 per month at 8.5% based on a thirty-year amortization.

51. Although the Disclosure Statement does not include any discussion of the feasibility, Lender has attempted to piece together an analysis of Debtor's cash flow based on the limited financial information it has. Assuming an effective date of March 1, 2025, which seems unlikely, Debtor's cash flow would be as follows:

---

[2] Lender disputes that 8.5% is the appropriate interest rate based on the circumstances of the case. *See Till v. SCS Credit Corporation*, 541 U.S. 465 (2004).

11

|  |  | March | April | May | June |
|---|---|---|---|---|---|
| INCOME | Rental Income | $45,101.00 | $45,101.00 | $45,101.00 | $45,101.00 |
|  | Restaurant Income |  |  |  | $14,750.00 |
|  | **TOTAL INCOME** | $45,101.00 | $45,101.00 | $45,101.00 | $59,851.00 |
| GENERAL EXPENSES | Insurance Liability |  | $7,785.00 |  |  |
|  | Leasing Commission | $985.00 | $985.00 | $985.00 | $985.00 |
|  | Repair/Replacement | $500.00 | $500.00 | $500.00 | $500.00 |
|  | Elevator Service | $600.00 | $600.00 | $600.00 | $600.00 |
|  | Electric | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 |
|  | Gas | $100.00 | $100.00 | $100.00 | $100.00 |
|  | Telephone/Internet | $450.00 | $450.00 | $450.00 | $450.00 |
|  | Water/Sewer | $1,040.00 | $1,040.00 | $1,040.00 | $1,040.00 |
|  | Miscellaneous | $400.00 | $400.00 | $400.00 | $400.00 |
|  | Construction | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
|  | Tax Escrow | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
|  | **TOTAL GENERAL EXPENSES** | $16,775.00 | $24,560.00 | $16,775.00 | $16,775.00 |
|  | Net Income | $28,326.00 | $20,541.00 | $28,326.00 | $43,076.00 |
|  |  |  |  |  |  |
| PLAN PAYMENTS | PV Georgia Views | $28,344.04 | $28,344.04 | $28,344.04 | $39,010.17 |
|  | District of Columbia Tax Claim | $2,350 | $2,350 | $2,350 | $2,350 |
|  | U.S Trustee Fees |  |  |  |  |
|  | Administrative Expense |  |  |  |  |
|  | **TOTAL PLAN PAYMENTS** | $30,694.04 | $30,694.04 | $30,694.04 | $41,360.17 |
|  | Cash Remaining | -$2,368.04 | -$10,153.04 | -$2,368.04 | $1,715.83 |

52. Debtor would have to have full occupancy, all tenants paying, and the restaurant opened by the effective date to generate enough income to make the proposed plan payments to Lender (which are not correct, *see supra*, or agreed to by Lender) and to make payments on the secured claim of the District of Columbia[3]. This does not leave any room for U.S. Trustee fees and Administrative Expenses that will be due on the effective date of the Plan.

53. Not only can Debtor not make the monthly payments in the amounts proposed in the Plan (which are neither correct nor comply with the requirements of Section 1129 and applicable law), but Debtor certainly cannot make monthly payments of $64,926 on Lender's Allowed Claim in the amount of $8,443,865.12 at 8.5% based on a thirty-year amortization. In fact, such payments exceed Debtor's potential monthly gross income.

---

[3] The payment to the District of Columbia was calculated based on five-year monthly payments without interest.

54. Debtor also proposes to pay approximately $691,098.95 to holders of Class C claims following a refinance. Given that Debtor has insufficient income to pay Lender's claim and the secured tax claim, Debtor will not have any income available to pay Class C claims.

55. Additionally, at least six of the tenant leases expire in March and April and the Debtor has been unable to provide evidence of escrowed security deposits, which should total $37,776.00.

56. To date, Debtor has not realized its projected income and has one or more tenants behind on rent. Debtor's liquidation analysis only shows cash totaling $20,478.87. Further, despite representations that the restaurant would begin paying rent in December 2024, it has not. The Disclosure Statement and Plan do not provide any specifics on when the restaurant anticipates opening or paying rent, beyond a footnote explaining the payment increase after three months "following the anticipated opening of the restaurant at the Property and an increase in rental income." (Doc. 45 at 10).

57. "Where a debtor proposes to fund a plan out of operating revenue, its financial record during the pendency of the Chapter 11 is probative of feasibility and 'income projects' indicating financial progress must be based on concrete evidence of financial progress, and must not be speculative, conjectural or unrealistic." *In re Agawam Creative Mktg. Assocs., Inc.*, 63 B.R. 612, 619 (Bankr. D. Mass. 1986).

58. Beyond the Debtor not being able to fund the Plan through ongoing operations, a refinance of the debt owed to Lender is not feasible. Debtor tried numerous times outside of bankruptcy to refinance and was unsuccessful. The last refinance offer Debtor received and communicated to Lender, dated October 4, 2024, provided for $7,750,000 (which included an interest reserve) and was based on a loan-to-value of 70.5%. This refinance did not materialize,

however, and Debtor filed bankruptcy to stop Lender's foreclosure sale. In any event, based on Debtor's prior refinance attempts, all of which failed, Debtor cannot obtain sufficient funds to pay Lender's secured debt, plus the secured property tax claim, in full.

59. The Plan as proposed is not feasible and the Debtor does not have sufficient revenue to propose a plan that would satisfy all the requirements of Section 1129. Based on the feasibility issue alone, the Debtor has no chance of confirming a plan within any time period, reasonable or otherwise.

### IV. The Plan fails to satisfy the "Fair and Equitable" Requirement as to Lender's Claim pursuant to Section 1129(b)(2)(A).

60. The Plan fails to satisfy the "fair and equitable" requirements of Section 1129(b) of the Bankruptcy Code with respect to Lender. Lender's secured claim is impaired under the Plan. Section 1129(b)(2)(i) requires that with respect to an impaired, dissenting class of secured claims, the plan must provide:

> (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.

61. The Plan states that Lender's claim is $7,400,000. Per the Stipulations and the Proof of Claim, Lender's claim as of the Petition Date was $8,443,865.12. Further, Debtor contends that Lender is oversecured by the Property, which would entitle the Lender to interest and, as provided under the loan documents, related fees and charges, including default interest. In the ninety (90) days since the Petition Date, $270,116.40 in interest has accrued (after credit for

14

the $60,000 in payments received by Lender to date). The Debtor has not allocated for this in the Plan. *See* 11 U.S.C. § 506(b). As such, the Plan does not comply with Section 1129(b)(2).[4]

## CONCLUSION

62. The intent of Congress in enacting Section 362(d)(3) was not to allow a debtor to file a mere place-holder plan on the last day of the 90-day period, to hold creditors hostage and not commence the payment of interest. *See, e.g., In re South Side House, LLC*, 474 B.R. 391 (Bankr. E.D.N.Y. 2012) ("Section 362(d)(3) has been interpreted as expressing Congress' intent to expedite single asset real estate cases."). It is clear that Debtor's proposed Plan was filed for just that purpose.

63. Debtor has the burden of proof to show that the Plan "has a reasonable possibility of being confirmed within a reasonable time." *See* 11 U.S.C. § 362(g). Debtor cannot meet its burden because the Disclosure Statement does not contain adequate information, the Plan does not comply with Section 1129(a) of the Bankruptcy Code, and the Debtor does not have sufficient income to confirm any plan. *See In re Trigee Found., Inc.*, 2013 Bankr. LEXIS 1432, at *3-4 (Bankr. D.C. April 8, 2013) (granting relief under Section 362(d)(3) where the Debtor failed to file a disclosure statement, was counting on ongoing renovations on apartments, failed to escrow for taxes pursuant to an expired cash collateral order, and failed to place the secured claim of the District of Columbia in a class).

64. It is undisputed that Debtor failed to make monthly payments to Lender as and when due under the Note, failed to pay the entire balance owed at maturity and did not commence monthly payments on January 7, 2025 as required by 11 U.S.C. § 362(d)(3). Accordingly, because

---

[4] Nothing herein constitutes a waiver of Lender's ability to raise further objections to approval of the Disclosure Statement or confirmation of the Plan. Lender reserves the right to assert additional objections to the Debtor's Disclosure Statement and Plan, including any amendments thereto.

Debtor did not make the monthly interest payment as required under Section 362(d)(3) and because the proposed Plan does not have a reasonable possibility of being confirmed within a reasonable time, Lender is entitled to relief from the automatic stay under Section 362(d)(3).

WHEREFORE, Lender respectfully requests that this Court enter an order:

(a) lifting the automatic stay pursuant to Section 362(d)(3) of the Bankruptcy Code to allow Lender to exercise all rights that Lender has or may have against the Debtor or its assets, including the right to collect, repossess, and secure the Property, and conduct a foreclosure sale of the Property or otherwise exercise its rights and remedies under the Loan Documents, and to take any actions or sent any notices in connection therewith;

(b) waiving the 14-day stay pursuant to Rule 4003(a)(3) of the Federal Rules of Bankruptcy Procedure; and

(c) granting such other and further relief as is just.

Respectfully submitted, this 17th day of January, 2025.

By: */s/ James Van Horn*
James E. Van Horn
D.C. Bar No. 999859
JVanHorn@btlaw.com
BARNES & THORNBURG LLP
555 12th Street, NW, Suite 1200
Washington, D.C. 20004
Phone: (202) 371-6351

*s/ Lisa Wolgast*
Lisa Wolgast (pro hac pending)
Georgia Bar No.: 773399
Lisa.Wolgast@btlaw.com
BARNES & THORNBURG LLP
3340 Peachtree Road, NE
Suite 2900
Atlanta, GA 30326-1092
Phone: (470) 832-7537

*Attorneys for PV Georgia Views LLC*

16

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | ) |
| | ) |
| GA VIEWS MANAGEMENT, LLC | ) Case No. 24-00339-ELG |
| | ) |
| Debtor. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

      I hereby certify that on this day, I filed a true and correct copy of (1) *Motion to Lift the Automatic Stay* with the United States Bankruptcy Court for the District of Columbia using the Court's CM/ECF system, which will serve notice of such filing to all counsel of record and via first class mail with postage pre-paid to the following recipients:

GA Views Management, LLC
3105 Mount Pleasant Street NW
Washington, DC 20010

Brett Weiss
The Weiss Law Group, LLC
8843 Greenbelt Road, Box 299
Greenbelt, MD 20770

Kristen S. Eustis
Office of the United States Trustee
1725 Duke Street
Ste 650
Alexandria, VA 22314

      Dated: January 17, 2025

                                                                            By: */s/ James Van Horn*
                                                                             James E. Van Horn